IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CYNTHIA DUNN, PLAINTIFF, | § § § | |
| v. | § | CIVIL ACTION NO. 4:12-CV-496-Y |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, DEFENDANT. | § § § § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

## I. STATEMENT OF THE CASE

Plaintiff Cynthia Dunn ("Dunn") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"). Dunn applied for a period of disability and disability insurance benefits in November 2009, alleging disability commencing December 1, 2008. (Tr. 20, 132-33.) Her application for benefits was denied initially and on reconsideration. (Tr. 13, 81-85, 87-90.) The ALJ held a hearing on January 19, 2011 and issued a decision on April 25, 2011,

finding that Dunn was not disabled or entitled to disability insurance because she had the ability to perform her past relevant work as a data entry clerk. (Tr. 20-30, 45-78.) The Appeals Council denied Dunn's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 5-8.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the

claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## III. ISSUES

Dunn presents the following issues:

1. Whether the ALJ erred in finding at Step Four that Dunn could perform her past relevant work;

2. Whether the ALJ properly evaluated the credibility of Dunn;

3. Whether the ALJ erred in failing to find that all of Dunn's impairments were severe; and

4. Whether the ALJ erred in making a residual functional capacity ("RFC") determination that failed to contain all of Dunn's functional limitations.

(Plaintiff's Brief ("Pl.'s Br.") at 10-19.)

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his April 25, 2011 decision, the ALJ found that Dunn met the disability insured status requirements of the SSA through March 31, 2010 and that she had not engaged in substantial gainful activity since December 1, 2008, her alleged onset date of disability. (Tr. 22.) The ALJ further found that Dunn had the following severe impairments: "degenerative disc disease of the cervical spine, status-post fusion; degenerative joint disease of the left ankle, status-post tibial fracture; hypertension; asthma; depression; and anxiety disorder." (Tr. 22.)

Next, the ALJ held that none of Dunn's impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 23-24.) As to Dunn's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work[1] . . . with the following limitations. She could lift and carry 10 pounds occasionally and 5 pounds frequently. She could stand and walk about 2 hours in an 8-hour workday. She could sit about 6 hours in an 8-hour workday. She could

---

[1] Sedentary work is defined as follows:

> [I]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday. *See* 20 C.F.R. § 404.1567(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983).

> frequently handle and finger with the bilateral upper extremities. She could occasionally reach overhead. She could perform detailed, non-complex job tasks.

(Tr. 24 (footnote added).) The ALJ opined, based on his RFC assessment and the testimony of the vocational expert ("VE"), that Dunn could perform her past relevant work as a data entry clerk. Thus, the ALJ found that Dunn was not disabled. (Tr. 29.)

## V. DISCUSSION

### A. Step Four: Past Relevant Work

Dunn argues that she could not perform her past relevant work as a data entry clerk with her physical and mental nonexertional limitations. (Pl.'s Br. at 11-14.) As to her physical nonexertional limitations, Dunn notes that the ALJ, in the RFC determination, found that she "retained the ability to finger frequently with the bilateral upper extremities and to reach overhead occasionally." (Pl.'s Br. at 11; *see* Tr. 24.) Dunn states that, according to the information in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), the position of a data entry clerk requires the ability to reach frequently and to finger[2] constantly. (Pl.'s Br. at 11 (citing SCO at 345)). Dunn argues that, based on such requirements, she could not perform her past relevant work as a data entry clerk "because it required frequent reaching and constant fingering and the ALJ limited the Plaintiff to occasional overhead reaching and frequent fingering." (Pl.'s Br. at 12.)

---

[2] Fingering is defined as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling." U.S. Dep't of Labor, SCO, C-3 (1993)).

When determining at Step Four whether the claimant could perform her past relevant work, the ALJ is permitted to consult a VE. *See, e.g., Adams v. Astrue*, No. 08-0135, 2009 WL 774845, at *7 (W.D. La. Mar. 24, 2009) ("At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that [the claimant] was able to return to her past relevant work."); *Pierce v. Astrue*, No. 07-1294, 2008 WL 4373036, at *13 (E.D. La. Sept. 22, 2008) ("Although a vocational expert is not required to make a step 4 determination, an ALJ may utilize such expert testimony.") A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan*, 58 F.3d at 132.

At Step Four, based upon the testimony of the VE at the hearing, the ALJ found that Dunn could perform her past relevant work as a data entry clerk. (Tr. 29.) At the hearing, the VE testified as follows:

> [ALJ:] Please identify the jobs you found in the record for the last 15 years.
>
> [VE:] Yes. There's been work as a data entry clerk. It is sedentary, semi-skilled, with an SVP of 4. . . .
>
> . . . .
>
> [ALJ:] All right. If I ask you to consider a person of Ms. Dunn's age, education, work history with the residual capacity for sedentary work—that's lifting no more than five pounds frequently or 10 pounds occasionally. Standing and walking for two hours out of eight, sitting for, for about six. Could such a person to [sic] any past work?
>
> [VE:] Yes.

[ALJ:] What—which jobs?

[VE:] The data entry clerk and the personnel recruiter.

[ALJ:] Okay. Now would those jobs allow for alternate sitting and standing?

[VE:] I believe . . . the data entry clerk would all [sic] for occasional periods to sit and stand. However, not at will. And the recruiter—again, I believe it would allow for a—periods to sit and stand, basically not at will. . . .

[ALJ:] Okay. All right. If a person is reduced to detailed, but not—cannot do complex tasks, could they still perform those, those two jobs?

[VE:] I believe they could perform the data entry clerk. . . . I would rule out the recruiter, as it does have a higher reasoning level requirement. . . .

[ALJ:] Okay. If we put a restriction of only occasional overhead reading [sic], would that chance [sic] your answer to—

[VE:] No.

[ALJ:] --either of those jobs?

[VE:] No, it would not.

. . . .

[Claimant's Attorney ("CA"):] The data entry clerk position. In looking at the description, is it fair to say that that's a job that requires frequent fingering and handling of a keyboard, observation—for lack of a better term—of a—of a monitor, like a computer monitor?

[VE:] Yes.

[CA:] Would that be fairly standard for that type of job?

[VE:] Yes, it would.

[CA:] So, you'd have to be able to sit or, at some position, be able to look at a monitor, and use a keyboard. Is that correct?

[VE:] That's correct.

(Tr. 74-76.)

In this case, Dunn contends that it was error for the ALJ to rely on the VE's testimony at Step Four that Dunn could perform her past work as a data entry clerk because such testimony conflicts with the information contained in the DOT and SCO regarding the work of a data entry clerk. The DOT and its supplement, the SCO, "comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs." *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608-09 (E.D. Tex. 2009); *see Conaway v. Astrue*, No. 3:07-CV-0906-BD, 2008 WL 4865549, at *5 (N.D. Tex. Nov. 10, 2008) ("The DOT, along with a companion volume—[SOC]—contain descriptions of the requirements for thousands of jobs in the national economy."); *see* DOT xv (rev. 4th ed. 1991); SOC at vii; *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Gaspard v. Soc. Sec. Admin., Comm'r*, 609 F. Supp. 2d 607, 612 (E.D. Tex. 2009) ("The DOT and its supplement, [SCO], comprise a comprehensive listing of job titles in the United States, along with detailed description of requirements for each job . . . .").

Where there is a conflict between the VE's testimony and the DOT (or SCO), the Fifth Circuit has adopted a "middle ground" approach under which the ALJ's discretion to choose between conflicting evidence is not unfettered. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000); *see Nally v. Astrue*, No. 3-10-CV-1631-BD, 2011 WL 3844107, at *4 (N.D. Tex. Aug. 29, 2011) (stating that the Fifth Circuit has "adopted a 'middle ground' approach which allows the ALJ to

rely on vocational expert testimony if the record reflects an adequate basis or a reasonable explanation for deviating from the DOT"). Because this type of conflict surfaced somewhat frequently, the Commissioner issued SSR 00-4p to ensure that ALJs would expose and reconcile such conflict before relying on VE testimony. SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). The ruling, which unambiguously establishes the ALJ's affirmative duty to bring to light and explain any "apparent unresolved conflict" between the VE's testimony and the DOT or its companion publication, the SCO, states the following:

> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> > Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and
> >
> > If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *2, 4 (S.S.A. Dec. 4, 2000).[3] When there is a conflict, neither

---

[3] Before SSR 00-4p became effective, the Fifth Circuit decided *Carey* to resolve whether VE testimony that conflicts with the DOT can provide substantial evidence to support the Commissioner's decision. *Carey*, 230 F.3d at 143-45 (identifying the various positions taken by other circuits); *see Johnson v. Astrue*, No. 11-3030, 2012 WL 5472418, at *8 (E.D. La. Oct. 5, 2005). The Fifth Circuit joined the majority of circuits in adopting a "middle ground approach," under which "neither the DOT nor the vocational expert testimony is per se controlling." *Carey*, 230 F.3d at 145-47. However, under this approach, the ALJ's "discretion to choose between conflicting evidence is not unfettered" and in part depends on the nature of the conflict. *Romine v. Barnhart*, 454 F. Supp. 2d 623, 627 (E.D. Tex. 2006); *see Carey*, 230 F.3d at 146-47.

*Carey* identified three types of conflict and limited its holding to "implied or indirect" conflict, which is characterized as being tangential in nature and unapparent until further inference is made. *Carey*, 230 F.3d at 145-47; *see Johnson*, 2012 WL 5472418, at *9 ("A tangential, implied or indirect conflict occurs when there is no direct conflict between the expert testimony regarding the exertional or skill level required for a particular job and the [DOT], but additional inferences can be drawn (and the plaintiff is asking the court to draw them on appeal) that the [DOT] description may conflict with the [VE's] testimony that the claimant is capable of performing a particular job."). In *Carey*, the claimant had only one arm, and the jobs in question required manual dexterity. *Carey*, 230 F.3d at 146. The court decided the conflict was implied or indirect because it did not even become apparent until "further

the DOT nor the VE evidence automatically "trumps" the other. *Id.* at *4. The conflict must be resolved by determining whether the VE's explanation is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in his decision how any conflict that has been identified was resolved. *Id.*

---

inference is made that the jobs require manual dexterity with, not one, but two hands." *Id.* The court held that, to the extent the VE's testimony impliedly or indirectly conflicts with the DOT, "the ALJ may rely upon the [VE]'s testimony provided that the record reflects an adequate basis for doing so." *Id.* In so holding, the court reasoned that a claimant who did not raise implied conflict at the administrative hearing cannot be permitted to thereafter peruse the record in search of such conflict to present as reversible error. *Id.* at 146-47.

*Carey* distinguished implied or indirect conflict from two other types of conflict: (1) the "direct and obvious" conflict, which exists when the VE's testimony conflicts with the DOT, and (2) the "less obvious" conflict, which arises when the VE's testimony "creates a conflict or discrepancy between the ALJ's [RFC] determination . . . and the DOT job descriptions." *Id.* at 145-46; *see Johnson*, 2012 WL 5472418, at *8 (stating that there are two ways VE's testimony can create a direct conflict: (1) when the VE testifies that a particular job requires a particular exertional or skill level when the DOT expressly provides that the job requires a different exertional level and (2) when the VE's testimony places the ALJ's RFC finding or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT). Courts have continued to treat both the "direct and obvious" conflict and the "less obvious" conflict as "direct conflicts," a category of conflicts separate and distinct from the implied or indirect conflict. *See Graham v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-2133-N (BH), 2009 WL 3199382, at *7 (N.D. Tex. Oct. 2, 2009); *Augustine v. Barnhart*, No. 1:00-CV-749, 2002 WL 31098512, at *9 (E.D. Tex. Aug. 27, 2002) (referring to obvious conflict and less obvious conflict as "direct conflict scenarios").

While *Carey* did not squarely decide what standard applies to direct conflict, district courts in this circuit have held that a claimant's failure to raise a direct and obvious conflict does not amount to waiver and that it is still the ALJ's burden to inquire about such conflict. *See, e.g.*, *Romine*, 454 F. Supp. 2d at 630 (recognizing that *Carey* was limited to "extraordinary and extreme" situations involving implied or indirect conflict and that "one should not assume that *Carey* . . . articulate[d] a rule of general application in all circumstances"); *Cooper v. Comm'r of Soc. Sec. Admin.*, No. 3:09-CV-1302-BF, 2011 WL 61613, at *7-8 (N.D. Tex. Jan. 6, 2011) (Stickney, Mag. J.) (dismissing the waiver claim because it only applies to implied or indirect conflict); *Baty v. Barnhart*, 512 F. Supp. 2d 881, 893-94 (W.D. Tex. 2007) ("[T]he [direct] conflict present in this case was specifically excepted in the *Carey* case. Pursuant to the burden that is placed on the Commissioner in step 5 of the analysis and the ALJ's duty to fully develop the record, error was committed . . . ." (internal citations omitted)).

As discussed *infra*, the conflict in this case is the "direct and obvious conflict," which exists when the VE's testimony conflicts with the DOT, or in this case, the SCO. *See Carey*, 230 F.3d at 145-46. This is not the type of tangential or inferential conflict at issue in *Carey* that is only discovered by the claimant subsequently perusing the record in search of such conflict to submit as reversible error. *See Carey*, 230 F.3d at 146-47. Because the conflict in this case is the direct type, Dunn did not need to raise the conflict at the hearing or risk waiving it. Instead, the ALJ retained the burden at Step Four of the analysis to fully develop the record. Thus, Dunn could not have waived his right to assert this conflict by not raising it at the hearing before the ALJ, and the ALJ's failure to question the VE regarding this direct conflict warrants remand.

SSRs represent "statements of policy and interpretations" adopted by the Social Security Administration that are "binding on all components" of the Administration. 20 C.F.R. § 402.35(b)(1). While binding on the Administration, these interpretive rulings are not binding on the courts, so courts need not give them the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) (noting the varying degrees of deference the rulings may be afforded); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). However, courts may, as the Fifth Circuit frequently has, "rel[y] upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

An ALJ's violation of a ruling, in general, is reversible legal error, provided that the error results in prejudice. *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) (per curiam) ("Should an agency in its proceedings violate its rules and prejudice result, the proceedings are tainted and any actions resulting from the proceeding cannot stand."). In addition, the Fifth Circuit has ruled that, even when the ALJ fails to discover and address conflicts between the testimony of a VE and the DOT, the claimant is not entitled to relief unless he can show that he was prejudiced by the alleged error. *See DeLeon v. Barnhart*, 174 F. App'x 201, 203 (5th Cir. 2006).[4] *See, e.g.*, *Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006).[5] A claimant establishes the

[4] Unpublished Fifth Circuit opinions are not precedent but may be persuasive. 5th Cir. R. 47.5.4. *See also Romine*, 454 F. Supp. 2d at 627.

[5] Also persuasive to this Court is the holding by the Eastern District of Texas that a violation of SSR 00-4p constitutes legal error and that remand is warranted upon a finding of prejudice. *Romine*, 454 F. Supp. 2d at 628. In *Romine*, the ALJ did not perceive that any conflict existed and, thus, did not ask about any potential conflict. *Id.* In the written decision, the ALJ stated, "The vocational expert testified that the information provided conforms to the Dictionary of Occupational Titles." *Id.* Noting that the ALJ was mistaken, the *Romine* court clarified that the hearing transcript did not reveal any such testimony by the VE. *Id.* Indeed, the VE simply "recited DOT codes for the jobs she identified" but did not "acknowledge, discuss, distinguish or reconcile" the DOT requirements with the hypothetical limitation. *Id.* Recognizing that each job identified by the VE presented the conflict, the court held that

requisite prejudice by showing that, "if the ALJ had fully developed the record," additional evidence would have been produced that "*might* have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (emphasis added).

In this case, as noted above, the ALJ determined that Dunn had the physical RFC to perform sedentary work with several limitations, including that Dunn "could frequently handle and finger with the bilateral upper extremities" and "could occasionally reach overhead." (Tr. 24.) Based on the testimony of the VE, the ALJ went on to find that Dunn, even with the limitations that she could handle and finger frequently, was able to perform her past relevant work as a data entry clerk. The DOT, however, describes the job of a data entry clerk as follows:

> Operates keyboard or other data entry device to enter data into computer or other magnetic tape or disk for subsequent entry: Enters alphabetic, numeric, or symbolic data from source documents into computer, using data entry device, such as keyboard or optical scanner, and following format displayed on screen. Compares data entered with source documents, or re-enters data in verification format on screen to detect errors. Deletes incorrectly entered data, and re-enters correct data. May compile, sort and verify accuracy of data to be entered. May keep record of work completed.

DOT § 203.582-054 (rev. 4th ed. 1991). In addition, the SCO indicates that the job of data entry clerk requires, *inter alia*, frequent reaching and constant fingering. SCO at 345.

Based on the information in the SCO, it is clear that there is a direct conflict between the VE's testimony that Dunn could perform her past relevant work as a data entry clerk with the limitation in the RFC determination that Dunn could perform jobs requiring ***frequent*** fingering

---

prejudice was self-evident because the VE might change her mind when presented with the conflict or that the ALJ might not be satisfied with the VE's attempt to dismiss the conflict. *Id.* at 628-29.

and the SCO, which classifies the position as requiring the ability to perform ***constant*** fingering.[6] There is a direct and obvious difference between performing some activity frequently, as required by the ALJ, and performing some activity constantly, as required by the SCO, especially when viewed in terms of a data entry clerk position. *See Conaway*, 2008 WL 4865549, at *7 ("[T]here is a direct conflict between [the VE's] testimony that plaintiff can work as a fast food worker, despite limitations on her ability to perform fine and gross manipulation on more than a frequent basis, and the DOT, which classifies the job as requiring reaching and handling on a constant basis.") The DOT, itself, states that there is a difference in such terms as it defines the term "frequently" as indicating that an activity occurs 1/3 to 2/3 of the time and defines the term "constantly" as indicating that an activity occurs 2/3 or more of the time.[7] DOT at 1013.

---

[6] *See Johnson*, 2012 WL 5472418, at *10 ("If there is a conflict, the court must decide whether it is direct or, in the word used by SSR 00-4p, apparent, which might require a remand for the Commissioner to resolve the unexplained conflict. If there is no direct or apparent conflict, the court must determine whether there is an indirect or implied conflict and, if so, whether plaintiff's failure to question the vocational expert about the conflict at the hearing precludes [the claimant] from appealing to this court on the basis of the conflict.")

[7] The Defendant argues, *inter alia*, that based on information in the record about Dunn's past relevant work as a data entry clerk, "Dunn's description of the demands of her past relevant work support the ALJ's finding that she could perform her past relevant work as actually performed." (Defendant's Response ("Def.'s Resp. at 7.") The gist of Defendant's argument appears to be that the ALJ, in deciding whether a claimant can still perform her past relevant work at Step Four, can consider the demands and duties of a particular past relevant job as the claimant had actually performed it ***or*** as generally required by employers throughout the national economy. *See Brown v. Astrue*, No. 3:08-CV-0255-D, 2009 WL 64117, at *5 (N.D. Tex. Jan. 12, 2009) ("In deciding whether a claimant can still perform her past relevant work, the ALJ must consider both the demands and duties of a particular past relevant job as the claimant had performed it and as generally required by employers throughout the national economy. A claimant will not be found to be disabled if she can still perform either of these."). Defendant argues that, because the evidence in the record shows that she could perform her past relevant work as she actually performed it in the past (as opposed to the description of such work in the DOT and SCO), then the ALJ's finding at Step Four is supported by substantial evidence. (*Id.*)

The Court notes, however, that the document relied on by the Defendant in making this argument indicates that Dunn worked six hours (out of eight) each day in writing, typing or handling small objects in her past job as a data entry clerk. (Tr. 175.) This activity would constitute the amount of "fingering" that would be required of her as a data entry clerk. Having to use her fingers six out of eight hours each day means that Dunn would be "constantly" fingering as that term is defined in the SCO. Thus, Defendants' argument that, in essence, Dunn's past relevant work

Although the ALJ relied on the VE's testimony to find that Dunn could perform her past relevant work as a data entry clerk, there is nothing in the record that explains how such a job can be performed by someone who is limited to frequent (as opposed to constant) fingering. In addition, there is nothing "to suggest that either the [VE] or the ALJ was actually aware of the conflict with the SCO requirements." *Conaway*, 2008 WL 4865549, at *7. "When vocational evidence provided by a VE . . . is not consistent with the information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled." SSR 00-4p, 2000 WL 1898704, at *4; *see also Conaway*, 2008 WL 4865549, at *7. If the ALJ resolves the conflict in favor of the VE, the "ALJ must articulate a 'plausible reason' for accepting testimony that conflicts with the DOT so that the hearing decision is susceptible to meaningful judicial review." *Id.* (citing *Augustine v. Barnhart*, No. 1-00-CV-749, 2002 WL 31098512, at *10 (E.D. Tex. Aug. 27, 2002)).

In this case, the ALJ did not articulate any reason for disregarding the SCO's nonexertional requirement of constant fingering in relying on the VE's testimony that Dunn could perform her past relevant work as a data entry clerk. As a result, substantial evidence does not support the ALJ's finding at Step Four that Dunn can perform her past relevant work. *See, e.g.*, *Seale v. Astrue*, No. 7-11-CV-028-O-BD, 2012 WL 1019958, at *5 (N.D. Tex. Mar. 8, 2012). Furthermore, such failure prejudiced Dunn because there is evidence that has not been rebutted or explained that Dunn, in fact, could not perform her past relevant work as a data entry clerk. Consequently, the case must be remanded.

---

as a data entry clerk did not require constant fingering as she ***actually*** performed it is incorrect.

Because this Court is recommending that this case be remanded pursuant to the above issue, the Court will not consider the other remaining issues raised by Dunn. On remand, the ALJ should carefully consider such issues as well.

**RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 27, 2013** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 13, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv